May it please the court, my name is Edmundo Robina and I represent the appellant Tresa Floyd in this matter. This is a FMLA interference in an ADA discrimination case. The county demoted Ms. Floyd, they say because of complaints during an FMLA leave that she took, but we believe the jury could find that a disability was a motivating factor and or that FMLA leave was a negative factor in the demotion. This is because there were three attempts to persuade Mrs. Floyd to step down. Two of them occurred before any investigation had really started into the allegations that later were supposed to be the reasons for her demotion. The first one was on October 24, 2013 before any complaint was filed against Ms. Floyd. The second one was on the day after the investigation started. The district court discounted the first one saying that it was reasonable to ask Ms. Floyd to step down at that time because of her condition, but a jury could find that at that time Mrs. Floyd had only been gone for two weeks and there was no indication that she was not going to be able to do some job at the county. So the decision to ask her to step down could be, there could be an inference that disability, her disability was a reason for that request. The district court did not discuss at all the early March request from Ms. Velasquez for Ms. Floyd to step down. Also in May of 2014, Ms. Floyd accused Ms. Velasquez of conspiring with the ultimate decision-maker and Ms. Velasquez's response was that we tried to, I tried to talk to you about finding something else for you and you said that if I was, if you were going to do this you were going to have to make it happen. We believe that this is a subordinate bias case. Ms. Velasquez had a Floyd that developed during her illness and she was involved in the decision to demote and we know this because we have an email in which Ms. Velasquez says to Ms. Stratton, the HR representative, we're going to meet on March 3rd because Mr. Floyd is going to step down. So what's going on here and where we go from here? So there's no reason. Assuming we get to the legitimate non-discriminatory reasons and there were some in this case, there appear to be, what's your best evidence of pretext? The best evidence of pretext is that the two of Ms. Velasquez's requests for Ms. Floyd to step down occurred before, long before the investigation was completed. The first one before there was ever a complaint and the second one the day after they started the investigation. That's the best evidence. In addition, Ms. Velasquez indicated her concern about Ms. Floyd's, the fact that she was on FMLA leave and there were so many things to do. They also moved her articles out of her office during her FMLA leave. There's not a lot of direct information here where they say, you know, we've got to get her out of here because she's on FMLA leave. These cases don't take a lot of evidence at this stage because this court has found many times that you need a full record, a full evidence. The judge needs to see and the jury needs to see the witnesses and how they look during a trial. But you do have the timing here. This demotion occurred three months after Ms. Floyd went on leave and Ms. Floyd had, at the time, she had excellent reviews throughout her employment there. She's been there since 2005. She's had exceeds expectations ratings. She's never had any discipline and the timing itself is an issue. The first request to have her step down occurred two weeks after she went on FMLA leave and the second one just a few months after she went out on FMLA leave and two weeks after she came back from FMLA leave. So there's not a lot in terms of discussion, but a lot of this happens behind closed doors. Yes, there are some legitimate reasons, but for FMLA cases, it only has to be a negative factor. It doesn't have to be a motivating factor. And the motivating factor does not have to be a significant motivating factor. In the Lou case, all there was was circumstantial evidence. Lou went on FMLA leave for her pregnancy. Her supervisor indicated his dislike for that. He gave her a lower rating, 19% lower rating, and the court found that that suggested an inference of discrimination. And Lou's supervisor provided information to the person who was making the ultimate decision and that was sufficient for this court to say, this should go to a jury. Do you want to talk about the ADA claim? The ADA claim is similar. I mean, there's no question that she was disabled and that she was a qualified individual. The only question is whether or not this was a motivating factor was her disability. Again, the timing of the requests from Ms. Velasquez for her to step down indicate that it wasn't because of the investigation. The investigation hadn't started yet in October when it was the first time she asked her to step down. And the second request was just the day after the investigation started. So her disability, again, I mean, she had excellent evaluations, she had never been in trouble, and she moved from being this excellent employee to being asked to demote. And she refused. And she accused Ms. Velasquez of doing this. And her response was, I tried to get you to demote and you said if I was going to make it happen, or if it was going to happen, I was going to have to make it happen. And this is in response to her accusation that she is conspiring to demote her because of her leave based on her disability. So that's, that's. I think we have your argument. Go ahead. In hand, save some time for a bottle. Do you want to save some time for a bottle? Yes, sir. Good morning. May it please the court. My name is Christine Stutz here today on behalf of the employer, Maricopa County. Ms. Velasquez was not the complainant related to this investigation. She was not the investigator in this case, and she was not the decision-maker in this case. She participated in the meeting at which they made the decision, didn't she? Yes, Your Honor. That is correct. And she reviewed and edited the notice of decision. Your Honor, I would agree that she did review the notice of decision. I don't believe that she provided any edits. That information always contained within the record. Specifically, she was Ms. Floyd's supervisor throughout the entire time that she's worked for Maricopa County. And in fact, continues to this day to be her supervisor. Ms. Floyd was demoted when the Department of Public Health's Human Resources Division received complaints from Ms. Floyd's subordinates. That investigation did not begin as a result of anything that Ms. Velasquez did. It was generated by two different employees of Ms. Floyd coming forward during the time of her FMLA leave, indicating by... It is rather odd that until she took this leave, all of her performance reviews were excellent, and that suddenly after she took the leave, Ms. Floyd, that she believed that Floyd should take a less demanding position, that she was concerned that the clinic floors were dirty and the processes were run inefficiently. And then suddenly we get complaints from two people about events that had occurred some considerable amount of time before. There was never these complaints until after the plaintiff went on this leave. They suddenly appeared about one, about an event that occurred a year previously. Yes, Your Honor. And if I'm, believe me, I'm not suggesting anything about the merits of any of this. I'm just looking at this from a summary judgment standpoint. And to say that Ms. Velasquez was not involved in this decision, I think stretches the fact somewhat. She was, her dissatisfaction was expressed for the first time when she took this leave and Ms. Velasquez's problems increased because there wasn't enough work there, enough people to do the work. And that disturbed her. And she sent allegations to the human relations department. Your Honor, if I may, Ms. Velasquez, there is an explanation provided by one of the complainants with regard to the timing of the events, which is simply stated. You can find the notes of the phone call that was made to the human resources division at the supplemental excerpts of record on page 45. And those notes summarize that Ms. Zurza, who was one of the original complainants, was scared to come forward, indicated that by Ms. Floyd on numerous occasions. And those were just some of the allegations of unprofessionalism that were brought forward that to the human resources division. There's absolutely no. What did she say suddenly made her no longer afraid? Because why? She was afraid for a year to do it. And why did she say she was no longer afraid? I don't believe she said she was no longer afraid. What she said was that she had, in fact, complained to Ms. Velasquez had not been willing to do anything because Ms. Velasquez and Ms. Floyd were friends. That's actually stated in those same notes from the from the telephone call. So at that point, she came forward to human resources and brought her complaint alleging that Ms. Floyd had been shaving time cards in violation of the FLSA, had been unprofessional with her, including kicking her under the table during meetings, had violated county policy by referring to her other staff as bitches, equally to the clients of the homeless clinic as bitches standing at the gate. And those were the items that were investigated by Ms. Stratton, who was the human resources manager, not by Ms. Velasquez. There was only a limited amount of participation by Ms. Velasquez during the course of the investigation. Specifically, she was requested to provide information about the eligibility of services of Ms. Floyd's sister, who had been receiving homeless clinic services that other clients of the clinic had not received. She also provided limited information about a particular directive with regard to the clinic flow. Essentially, she served as the subject matter expert in that situation because she is, in fact, the division administrator. With regard to the other items that you had mentioned, Your Honor, with respect to the clinic floors or the presence, it's important to note that Ms. Velasquez did not serve on the same worksite at the actual clinic. So during the time that she was serving as the interim director, and while the, excuse me, the other individual, Ms. Boutin, was serving as well in an acting capacity there, they were able to observe additional things that had not been observed previously. And that explains the coincidental timing. So to the extent that the argument is that the temporal proximity of the investigation was associated to the demotion, that argument fails here. This is a situation more comparable to the case of Curley versus City of North Las Vegas, in which the individuals were disputing several of the reasons. And this court held the timing of getting fired two months after the employee complained was not sufficient to establish pretext because the investigation itself explained the coincidental timing. Similarly, the plaintiff made reference to the Lew case, and in that case is easily distinguished from this one in the FMLA context. In Lew, the supervisor had made multiple expressions and even was responsible for denying the employee's use of FMLA leave. In this situation, there's no dispute that Ms. Floyd received all FMLA leave that she requested. And there's no dispute that she received all reasonable accommodations that she requested under the ADA. The human resources manager conducted an independent investigation. There were eight witnesses interviewed, employees, subordinates of Ms. Floyd, and multiple interviews confirmed that both the Ms. Floyd had allowed violations of the FLSA, had violated county policy, had kicked her subordinate under the table, and had allowed her sister, again, to receive services from the homeless clinic. This case, therefore, turns solely on the issue of subordinate bias. And the Supreme Court stated in Staub v. Proctor Hospital that the standard for applying subordinate bias theory, a supervisor must perform an act motivated by discriminatory animus that is intended by the supervisor to cause an adverse employment action. And that act must be the proximate cause of the ultimate employment action. I didn't think it had to be the proximate cause. I thought under the FMLA, it had to be only something that's taken into account. Correct, Your Honor. This standard was with regard to a USERRA case in Staub v. Proctor. This court has never had an occasion to extend subordinate bias theory to the FMLA interference or even to an ADA discrimination case. This is an issue of first impression with regard to that, but I think that the controlling law with regard to subordinate bias theory would still be applicable here. Similarly, this court has reviewed, since the Staub v. Proctor case, subordinate bias theory in two other contexts. One specifically was the France v. Johnson case. In that case, the court held that stray remarks that were not directly tied to the decision-making process were not going to be direct evidence sufficient to defeat summary judgment. I submit that the comments that were made here that the plaintiff is relying on for the basis of discriminatory animus are insufficient. There is no way a reasonable fact finder could conclude that one stray remark with regard to the inconvenience that might happen for Ms. Velasquez is sufficient to get to subordinate bias theory in this case. Well, it's not one stray remark. In October 31st, Velasquez mailed her boss complaining about the absence of Floyd and two other employees. That's correct. That was one. October 24th, Velasquez told Floyd that Velasquez and her superior believed that she should step into a less demanding position. Your Honor, if I may, with regard to that particular instance. That instance, with regard to the factual circumstances surrounding it, if you review the record, Ms. Velasquez indicated that Dr. England had suggested offering a less demanding position. At the time the comment was made, Ms. Floyd herself had stated that she did not believe she would be returning to work. In fact, her words were, it's time to call a duck a duck. And I can find the citation in the record for you, if you could. Okay. And then in November, Velasquez became concerned about the floors being dirty and it was run inefficiently. That's correct, Your Honor. And as I stated earlier, she was in that. In addition, Velasquez sent Human Resources additional materials about the allegations that Floyd shaved time from the employee time cards. That's correct, Your Honor. And that issue, Your Honor, was with respect to the individual who had, in fact, complained directly to Human Resources, had already complained. So what happened there was Ms. Velasquez simply forwarded Mr. Zasko's complaint. I'm only talking about Ms. Velasquez's role in this. I'm not saying that it was evil or that she had any real animus. But, Your Honor, with respect to that, it's important that she. Let him ask the question, please. But I'm trying to flesh out what her role was, and maybe that doesn't make any difference. But she played a significant role in this. She was also consulted about the Floyd sister, and she helped draft and review the notice of demotion. Your Honor, I don't. I would submit that with respect to these issues, when you really evaluate them based upon the record rather than the conclusory statements that are being articulated by the plaintiffs, those items in the record are not evidence of a significant or substantial role in either the investigation or in the decision-making process, such as would be required, for example. Wasn't she a participant in the meeting in early March? Your Honor. Where she and her immediate supervisor met with Mr. Porter, who made the decision, and they met for the purpose of deciding where we go from here. It was to discuss the situation and where to go from here. Your Honor. In the record, there is only one email, and that is the email that specifically states, Max, which is Mr. Porter, suggested we meet to discuss where to go from here. And there is one meeting notice that states, quote, HCH issues, close quote. There is not a single piece of evidence about what occurred in that meeting or for that matter, whether the meeting even actually took place. The plaintiffs simply have no evidence as to what occurred during that meeting, and therefore any evidence that would suggest that there was a bias or an influence by Ms. Velasquez. And as the district court properly noted, that was insufficient evidence to establish that there was a significant influence as was present, for example, in the case of Poland versus Chertoff, or in the case of France, or in the case of the subordinate bias theory. In short, we would submit that the three remarks with regard to the evidence of discriminatory motive are insufficient in this case to survive summary judgment. There's no evidence of an intentional act by Ms. Velasquez to prompt the demotion. And there's no evidence of Ms. Velasquez's influence on the decision-making process. There must be sufficient evidence from which a reasonable fact finder could conclude that the county impermissibly considered Ms. Floyd's use of FMLA or her disability in its decision to demote her. Under the standards of Anderson versus Liberty Lobby, when evidence is merely  As set forth by this court in Thornhill Publishing, conclusory and speculative testimony in affidavits is insufficient to survive summary judgment. The indirect evidence that the plaintiff has brought forth is so remote and attenuated that no reasonable fact finder could conclude there was a discriminatory motive or an intentional act that impermissibly considered Ms. Floyd's use of FMLA leave or her disability. The plaintiff was demoted over her misconduct. The county investigated the misconduct and took appropriate action. Maricopa County, as the employer, did everything you would expect it to do. The county should not be confronted with a jury trial over conclusory allegations, speculation, and attenuated arguments. We would request, therefore, that you affirm the district court's award of summary judgment in this matter. Thank you, counsel. Mr. Butler? Just briefly, Your Honors. I believe a jury could find that Ms. Velasquez was a participant in the decision and because if she wasn't a participant in the decision, there would be no reason for her to be invited to the meeting to determine what to do in this case. And there is evidence that the meeting took place because Ms. Velasquez said that she then met with Ms. Floyd subsequent to that meeting to try to talk her again into demoting, and that's at the record at 95, I'm sorry, 93 through 95. In the Staub case, the court found that you need only be a proximate cause, not the proximate cause, and the fact that there's an investigation that's independent of the decision doesn't mean that the county's relieved from fault. And finally, in the Liu case, I just want to note that the supervisor who had concerns about the plaintiff in that case taking leave and that downgraded her in her evaluations was not the one that made the ultimate decision, but influenced that decision, although that case was not determined, and it wasn't called a subordinate bias case, but that's what happened in that case. We don't have a subordinate bias case. Sorry? We don't have a subordinate bias case in this context. It's right on point. Would you agree? I would agree that there's not one that's been called a subordinate bias case, but if you look at the Liu case, that's pretty close. It's pretty close. Okay. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Reinhardt, Thomas, Korman